**IVY MOSES, LAWRENCE BOSCHULTE, LYDIA HENDRICKS, ALECIA WELLS, ARTURO WATLINGTON, JR. as members of the ST. THOMAS/ST. JOHN DISTRICT BOARD OF ELECTIONS, GLEN WEBSTER and BARBARA JACKSON-MCINTOSH, as members of the ST. CROIX DISTRICT BOARD OF ELECTIONS, Appellants/Plaintiffs**

**v.**

**CAROLINE FAWKES, as the SUPERVISOR OF ELECTIONS, and GOVERNMENT OF THE VIRGIN ISLANDS, Appellees/Defendants**

S. Ct. Civil No. 2016-0038

Supreme Court of the Virgin Islands

February 24, 2017

454

455

JULITA K. DE LEON, ESQ., Julita de Leon, PLLC, St. Thomas, USVI, *Attorney for Appellants*.

KIMBERLY L. SALISBURY, ESQ., IAN S. A. CLEMENT, ESQ., Assistant Attorney Generals, St. Thomas, USVI, *Attorneys for Appellees*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

### (February 24, 2017)

HODGE, *Chief Justice*. Various members of the St. Thomas/St. John District Board of Elections and the St. Croix Board of Elections appeal from the Superior Court's June 24, 2016 opinion and order, which denied their motion for a preliminary injunction directing the Supervisor of Elections — Caroline Fawkes — to cease enforcing the resign-to-run provisions of title 18, section 2 of the Virgin Islands Code. For the reasons that follow, we affirm.

## I. BACKGROUND

On May 16, 2016, Ivy Moses — a member of the St. Thomas/St. John District Board of Elections — filed a nominating petition for the office of Senator. Shortly thereafter, Fawkes issued a "Notice of Defect" advising Moses that 18 V.I.C. § 2 provided, in pertinent part, that

> No member of a Board of Elections may be a candidate for any other public office during the term for which the member was elected. Any member of a Board of Election must resign his position on the board as a condition of seeking any other public office.

Fawkes instructed that if Moses did not cure the defect within three days, she

457

would be disqualified from nomination or election. In a May 23, 2016 letter, Moses advised Fawkes that she would not resign from the Board of Elections, and Fawkes issued a "Notice of Disqualification" on May 25, 2016, citing Moses's failure to resign.

On May 27, 2016, Moses, as well as four members of the St. Thomas/St. John District Board of Elections and two members of the St. Croix District Board of Elections (collectively "members"), filed suit against Fawkes and the Government of the Virgin Islands[1] in the Superior Court, and concurrently filed a motion for a temporary restraining order and preliminary injunction. In these filings, the members alleged that the resign-to-run provision of 18 V.I.C. § 2 was unconstitutional, and requested that the Superior Court enjoin Fawkes from enforcing this provision against Moses or any other member of the Board of Elections who seeks election to a different public office. Later that same day, the Superior Court issued a temporary restraining order, and enjoined Fawkes from enforcing the resign-to-run requirement for fourteen days.

Fawkes filed an answer and counterclaims on June 10, 2016, which requested that the Superior Court declare that Moses's action constituted a conflict of interest and order Moses to either resign from her position or withdraw her nomination petition. The Superior Court held a hearing on the members' request for a preliminary injunction on June 15, 2016. After the hearing, both parties filed documents with the Court consenting to have the preliminary injunction hearing consolidated with a hearing on the merits. Also, on June 16, 2016, the members moved to dismiss Fawkes's counterclaims.

A little over one week after the hearing concluded, the Superior Court issued its June 24, 2016 opinion and order denying the motion for a preliminary injunction on the ground that the members failed to establish that the resign-to-run provision was unconstitutional. The Superior Court, however, did not rule on the motion to dismiss Fawkes's counterclaim or purport to dismiss the members' claims on the merits. The members timely filed their notice of appeal with this Court on July 21, 2016.

---

[1] Unless context requires otherwise, we collectively refer to Fawkes and the Government as "Fawkes."

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has appellate jurisdiction over "all appeals from the [final] decisions of the courts of the Virgin Islands established by local law[.]" 48 U.S.C. § 1613a(d); 4 V.I.C. § 32(a). Although this Court may ordinarily only hear appeals from a final judgment, it also has jurisdiction to hear appeals from "[i]nterlocutory orders of the Superior Court of the Virgin Islands . . . granting, continuing, modifying, refusing or dissolving injunctions." 4 V.I.C. § 33(b)(1). Because the Superior Court's June 24, 2016 opinion denied the members' motion for an injunction, this Court may exercise jurisdiction over this appeal. However, as shall be later explained, because the Superior Court effectively adjudicated the entire case on the merits, the June 24, 2016 opinion is also appealable as a final judgment pursuant to title 4, section 32(a) of the Virgin Islands Code.

This Court exercises plenary review of the Superior Court's application of law, while its factual findings are reviewed only for clear error. *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 436 (V.I. 2013) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)). However, the ultimate decision as to whether to grant or deny an injunction is reviewed for abuse of discretion. *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012); *see also Stevens v. People*, 55 V.I. 550, 552 (V.I. 2011) ("An abuse of discretion 'arises only when the decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' " (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003))).

### B. The Superior Court Effectively Denied the Request for a Permanent Injunction

■ In their appellate brief, the members maintain that the Superior Court misapplied the standard governing preliminary injunctions. The members correctly recognize that when considering a motion for a preliminary injunction, the Superior Court must consider four relevant factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will re-

459

sult in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Marco St. Croix, Inc. v. V.I. Hous. Auth.*, 62 V.I. 586, 590 (V.I. 2015) (quoting *Yusuf v. Hamed*, 59 V.I. 841, 847 (V.I. 2013)). In addition, this Court has explained that although the party requesting a preliminary injunction "has the burden of making some showing on all four injunction factors," it remains the responsibility of "the Superior Court [to] evaluate the moving party's showing on all four factors under a sliding-scale standard," in which "the Superior Court must make findings on each of the four factors and determine whether — when the factors are considered together and weighed against one another — the moving party has made 'a clear showing that [it] is entitled to [injunctive] relief.' " *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 557 (V.I. 2015) (quoting *Yusuf*, 59 V.I. at 847). According to the members, the Superior Court failed to follow this Court's precedents when it denied injunctive relief solely on the basis of the first factor, without making any findings on the remaining three factors.

■ The members further argue that the Superior Court incorrectly applied the first factor, in that they "do not have to convince the Superior Court that they will prevail or present such an overwhelming flood of evidence that the Superior Court cannot help but conclude that they will win on the merits," but under the sliding-scale standard could obtain a preliminary injunction "even if the Superior Court concluded that [their] claim on the merits were weak, so long as [they] made a strong showing on the remaining three claims." (Appellants' Br. 4-5.) The members are correct that this Court has previously held that equitable relief in the form of a preliminary stay or injunction is appropriate under a balancing of the equities, such as "when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." *Rojas v. Two/Morrow Ideas Enters.*, S. Ct. Civ. No. 2008-0071, 2009 V.I. Supreme LEXIS 6, at *5 (V.I. Jan. 22, 2009) (unpublished); *In re Najawicz*, S. Ct. Civ. Nos. 2008-0098, 0099, 2009 V.I. Supreme LEXIS 2, at *6 (V.I. Jan. 8, 2009) (unpublished).[2] Here, too, the members' claim

---

[2] Although the *Rojas* and *Najawicz* decisions were issued in the context of a motion for a stay pending appeal, the test for a stay pending appeal is identical to that governing a preliminary injunction. *Yusuf*, 59 V.I. at 847 n.3.

that the Superior Court failed to follow our precedents would appear to have merit, for in its June 24, 2016 opinion, the Superior Court did not attempt to ascertain the seriousness of the legal questions presented or determine whether the members possessed a chance of prevailing, but instead fully adjudicated the merits of the members' constitutional claims.

■ The members, however, fail to recognize that in this case, all the parties consented to have the hearing on the preliminary injunction consolidated with the hearing on the merits. "[W]hen a court has consolidated the hearing and decision on a preliminary injunction request with a trial on the merits . . . and the parties have not requested any relief other than an injunction, the court has decided the merits and not just the likelihood of success on the merits." *Fitzpatrick v. Town of Falmouth*, 2005 ME 97, 879 A.2d 21, 27 (2005). In such a situation, the Superior Court may "dispose of th[e] case on the merits, rather than through the lens of the injunction factors." *Mapp v. Fawkes*, 61 V.I. 521, 531 n.7 (V.I. 2014). In other words, the requirement that the Superior Court assess the likelihood of success on the merits "has no significance when the court reaches the merits . . . by consolidating the hearing on preliminary injunction with the hearing on the merits."[3] *Id.* Rather, the members must meet the higher standard required to obtain a permanent injunction, which requires actual success on the merits. *See Sarauw v. Fawkes*, 66 V.I. 253, 273 n.14 (V.I. 2017) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)). Importantly, unlike a preliminary injunction where a strong showing on the remaining three factors can overcome a low likelihood of success on the merits, a permanent injunction can never be entered without actual

---

[3] In a footnote to its June 24, 2016 opinion, the Superior Court stated that it "will apply the factors for preliminary injunction and only rule on the motion for preliminary injunction at this time." (J.A. 18.) However, the statements of the Superior Court in the main text of the same opinion contradict the representation made in this footnote, since the Superior Court — citing our *Mapp* precedent, which involved the dismissal of a complaint on the merits after a combined hearing on a request for preliminary and permanent injunction — stated that "if the Court holds that the statute is constitutional, Plaintiffs' Complaint necessarily fails and the Court need not evaluate the case 'through the lens of the injunctive factors,' " (J.A. 19) — and then proceeded to conclude that "Plaintiffs have not met their burden of proving a constitutional violation under the Fourteenth Amendment or the First Amendment." (J.A. 31.) Under these circumstances — where fleeting language in the text of a footnote contradicts the explicit holding of a judicial opinion — the explicit holding controls. *See United States v. Betancourth*, 554 F.3d 1329, 1333 n.3 (11th Cir. 2009).

461

success on the merits. *See, e.g., Oglala Sioux Tribe v. C & W Enters., Inc.,* 542 F.3d 224, 229 (8th Cir. 2008) (holding that a court only considers remaining permanent injunction factors after finding actual success on the merits); *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 881 (9th Cir. 1999) ("Actual success on the merits of a claim is required for a permanent injunction.").

■ Under these circumstances, the Superior Court, despite stating that it was denying the members' motion for a preliminary injunction, clearly adjudicated their constitutional claims on the merits—which it was permitted to do, given the parties' consent to have the preliminary injunction hearing also serve as a hearing on the merits.[4] Consequently, we treat the Superior Court's June 24, 2016 opinion as in effect denying the members' request for a permanent injunction. Therefore, the Superior Court committed no error by (1) fully adjudicating the members' claims on the merits rather than only assessing their likelihood of success, and (2) failing to analyze the remaining three injunction factors after determining that the members did not succeed on the merits.

## C. The Merits

In their Superior Court filings, the members contended that the resign-to-run provision (1) violates the Equal Protection Clause of the Fourteenth Amendment, and (2) is invalid under the First Amendment.[5] In its June 24, 2016 opinion, the Superior Court rejected the First and Fourteenth Amendment arguments on the merits, noting that although the resign-to-run provision "is a recent addition to the Virgin Islands Code, many states have enacted similar statutory provisions," and that "[t]he constitutionality of many of these statutes has been tested and upheld in state or federal courts." (J.A. 19-20.) We address each claim in turn.

---

[4] Moreover, although Fawkes ostensibly filed counterclaims, both of the enumerated counterclaims are essentially defenses to the members' constitutional claims, in that they assert that it would be a conflict of interest for Moses to seek election to the Legislature without resigning from her position on the Board.

[5] The members also alleged in their Superior Court filings that the resign-to-run provision constitutes an unconstitutional qualification on holding office in violation of the Revised Organic Act, an argument that the Superior Court did not address on the merits, but rejected after finding that the members lacked standing to assert the claim. However, because the members have not reasserted this claim in their appellate brief, the issue is waived. *See* V.I.S.Ct.R. 22(m) ("Issues that were . . . raised or objected to but not briefed . . . are deemed waived for purposes of appeal.").

## 1. *Equal Protection Clause*

■ The members contend that the resign-to-run provision violates the Equal Protection Clause in that it treats a certain class of individuals — members of the Boards of Election — differently than other persons with respect to the right to seek public office. The members concede that the Supreme Court of the United States has found that there is no fundamental right to be a candidate for political office, and that restrictions on the right to run for office or to hold office are not subject to heightened scrutiny under the Equal Protection Clause, but are reviewed only under the rational basis standard. *Bullock v. Carter*, 405 U.S. 134, 142-43, 92 S. Ct. 849, 31 L. Ed. 2d 92 (1972); *see also Claussen v. Pence*, 826 F.3d 381, 385 (7th Cir. 2016); *Molina-Crespo v. U.S. Merit Systems Protection Bd.*, 547 F.3d 651, 660 (6th Cir. 2008); *N.A.A.C.P. v. Jones*, 131 F.3d 1317, 1324 (9th Cir. 1997). Appearing to rely on the United States Supreme Court's decision in *Clements v. Fashing*, 457 U.S. 957, 102 S. Ct. 2836, 73 L. Ed. 2d 508 (1982) — which involved a federal constitutional challenge to a similar resign-to-run provision found in the Texas Constitution — as binding precedent, the Superior Court determined that 18 V.I.C. § 2 did not violate the Equal Protection Clause because

> [the resign-to-run provision] only prohibits a board of election member from running for another office during her tenure as a board member. Thus, because the term for board of elections members is four years, the largest burden that could possibly be imposed by the [resign-to-run provision] is a 'waiting period' of just over two and one half years. . . . Like [the resign-to-run laws] in *Clements*, [T]he establishment of a maximum 'waiting period' of two and one half years for candidacy by a board of elections member constitutes a *de minim[i]s* burden on the political aspirations of Plaintiff Moses. Furthermore . . . the burden is lessened by the fact that Moses may simply resign and avoid the waiting period.

(J.A. 23-24.)

■■ The Superior Court erred both in its reliance on *Clements* as a binding precedent and its conclusion that 18 V.I.C. § 2 only subjects

Moses and the other members to a two-and-one-half-year waiting period. In *Clements*, the United States Supreme Court considered challenges to Texas's resign-to-run requirement on both First Amendment and Equal Protection Clause grounds. However, although five justices joined in the portion of Justice Rehnquist's opinion rejecting the First Amendment challenge, only a plurality of four justices joined the portion of the opinion that rejected the Equal Protection Clause challenge. *Clements*, 457 U.S. at 959. Consequently, the portion of Justice Rehnquist's opinion in *Clements* that concluded that the resign-to-run provision did not violate the Equal Protection Clause because it was supported by a rational basis was merely a four-justice plurality opinion which does not constitute binding precedent. *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 81, 107 S. Ct. 1637, 95 L. Ed. 2d 67 (1987) (holding that plurality opinions are not binding because they "d[o] not represent the views of a majority of the Court"). Significantly, a five-justice majority — consisting of four justices in dissent and Justice Stevens concurring only in the judgment — expressly rejected the plurality's equal protection analysis. *See Clements*, 457 U.S. at 977-78 (Brennan, J., dissenting) ("Putting to one side the question of the proper level of equal protection scrutiny . . . no genuine justification exists that might support the classifications embodied in [the Texas resign-to-run laws]."); *Id.* at 975-76 (Stevens, J., concurring) ("Justice Rehnquist . . . has not, however, adequately explained the reasons, if any, for imposing those burdens [of the resign-to-run requirement] on some offices but not others."); *see also Citizens Party of Illinois v. Illinois State Bd. of Elections*, 546 F.Supp. 1050, 1058 n.10 (N.D. Ill. 1982) (observing that "Justice Stevens explicitly rejected the propriety of Justice Rehnquist's [equal protection] analysis" and "[t]he four dissenters, of course, agreed.").

The Superior Court's reliance on the plurality opinion in *Clements* is also misplaced for another reason: The resign-to-run law at issue in *Clements* required certain officeholders to resign prior to announcing their candidacy for a different office if the unexpired term of their current office was greater than one year. *Clements*, 457 U.S. at 960. Thus, a candidate serving a four-year term in an office subject to the resign-to-run law could announce his or her candidacy for a different office at the start of the fourth year without having to resign.

■ The Virgin Islands resign-to-run provision, however, does not provide for such a one-year grace period. Rather, our local statute provides that

> No member of a Board of Elections may be a candidate for any other public office during the term for which the member was elected. Any member of a Board of Election must resign his position on the board as a condition of seeking any other public office.

18 V.I.C. § 2 (emphases added). Thus, unlike the resign-to-law provision at issue in *Clements*, the Virgin Islands resign-to-run statute requires a member of a Board of Elections to resign even if the term of the other public office would not overlap with the member's term on the Board, since the statute requires resignation as a prerequisite to being a candidate or seeking office. Therefore, the "waiting period" for Moses to run for a seat in the Legislature without resigning is greater than just two and a half years, since even though her term expires in early January 2019, she may not be a candidate for any position during the 2018 election cycle except for re-election to her current position.

But while the Superior Court may have erred in this regard, such errors do not require that this Court set aside the June 24, 2016 judgment. *See* V.I.S.CT.R. 4(i) ("No error or defect in any ruling or order . . . is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties."). Whether a statute violates the Equal Protection Clause is a question of law which this Court reviews de novo. *See, e.g., Griffin v. Mann*, 156 F.3d 288, 291 (2d Cir. 1998); *Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929, 932 (10th Cir. 1989); *see also Destin v. People*, 64 V.I. 465, 469 (V.I. 2016) ("This Court reviews constitutional claims *de novo*."). Consequently, we may adjudicate the members' equal protection argument without granting any deference to the Superior Court's analysis.

■ It is well-established that, as a prerequisite to any claim that a statute violates the Equal Protection Clause, a party must prove that similarly situated individuals were treated differently. *Richland Bookmart Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002); *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000); *Johnson v. Smith*, 696 F.2d 1334, 1336 (11th Cir. 1983). This is because "[t]he Equal Protection

465

Clause does not forbid classifications," but "simply keeps governmental decision makers from treating differently persons who are in all relevant aspects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992) (citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989 (1920)).

In their filings in both the Superior Court and this Court, the members allege that the resign-to-run provision treats Board of Elections members running for other offices differently than Board of Elections members running for re-election, as well as government employees seeking any elective office, who need not resign but only take a leave of absence during their candidacy. 18 V.I.C. § 2. In its June 24, 2016 opinion, the Superior Court did not expressly address whether these groups are similarly situated, and instead proceeded directly to an analysis of whether the resign-to-run provision is rational.

 As a threshold matter, the members have failed to establish that members of the Boards of Election are similarly situated to ordinary government employees. Unlike ordinary government employees, members of the Boards of Elections are expressly charged with overseeing all aspects of the primary and general elections conducted in the Virgin Islands and, unless judicial review is sought and obtained with respect to a particular matter, they possess the final word on all aspects of election administration. 18 V.I.C. § 47. Consequently, there is a legitimate concern that a member of the Board of Elections who is simultaneously a candidate for an executive or legislative position may abuse his or her position on the Board of Elections to further his or her campaign. *Cf. Joyner v. Mofford*, 706 F.2d 1523, 1532-33 (9th Cir. 1983) (explaining that resign to run provision "prevents abuse of office before and after an election," which reflects a legitimate interest "in orderly, consistent, and honest government"); *In re Dunleavy*, 2003 ME 124, 838 A.2d 338, 348 (2003) (prohibition on judge seeking elected office without resigning is necessary "to separate a judge's political, legislative, or executive branch ambitions from the judge's judicial decisionmaking to further the objective of maintaining a judiciary that is independent and impartial"). This is bolstered by the fact that the Legislature has declared, as the policy for the Virgin Islands,

> (a) that no responsibility of government is more fundamental than the responsibility of maintaining the highest standards of ethical behavior

466

by those who conduct the public business; (b) that the people have a right to expect adherence by those who conduct the public business to the principle that all officials must act with the utmost integrity, absolute impartiality and loyalty to the public interest; [and] (c) that whereas the basis of effective democratic government is public confidence, that confidence is endangered when ethical standards falter or appear to falter.

3 V.I.C. § 1100.

Significantly, these concerns are not necessarily alleviated by a leave of absence. There is a risk that other members of the Board, the Supervisor of Elections or other employees of the election system may treat a sitting member of the Board differently than other candidates. Moreover, a Board of Elections member who returns to the Board after losing an election to a different office could still use his or her position on the Board to retaliate against other candidates or employees of the election system, such as the Supervisor of Elections and his or her deputies. These concerns are simply not present with ordinary government employees, since no other class of government official possesses such significant and largely unrestricted power over the election process itself.[6] Thus, Board members are not similarly situated to ordinary government employees.

Unlike members of the Boards of Elections and ordinary government employees, members of the Board running for election to other public offices appear similarly situated to members of the Board running for re-election to their current positions. This is because all the concerns that would justify a member resigning from the Board when running for a different public office would seem to apply with equal force to a member who is running for re-election to the Board, yet a member seeking re-election is not required to resign as a prerequisite to announcing his or her candidacy.

Nevertheless, a rational basis exists for exempting Board members seeking re-election from the resign-to-run requirement while imposing it on members who declare their candidacy for a different office. In its June 24, 2016 opinion, the Superior Court determined that the Legislature

---

[6] Notably, it does not appear that the Virgin Islands Code contains any provision providing for the removal of an elected member of the Board of Elections, whereas the Supervisor of Elections and other election system employees may be removed by the Board.

enacted the resign-to-run provision because a member seeking election to a different office would have a conflict of interest with respect to administering the election for that office, and that while a leave of absence could cure the conflict, there was a strong risk that the Board would lose its quorum[7] if multiple members ran for other offices, and thus not be able to fulfill its obligation to administer gubernatorial and legislative elections. Because Virgin Islands law provides an established mechanism for filling vacancies on the Board in a prompt manner, *see* 18 V.I.C. § 41(f),[8] the resign-to-run requirement would prevent such a scenario.

█ Although the conflict of interesting facing members of the Board seeking re-election is similar to that facing those who seek election to other offices, the conflict is unavoidable. Unlike numerous other jurisdictions, where members of the boards of elections are selected by appointment, section 6(c) of the Revised Organic Act mandates "[t]hat members of boards of elections . . . shall be popularly elected." 48 U.S.C. § 1572. Because the Legislature is without power to enact legislation that is inconsistent with the Revised Organic Act, *see* 48 U.S.C. § 1574, it cannot wholly eliminate the problem of actual or perceived conflict of interest, such as by eliminating the popular election of Board members altogether. Moreover, extending the resign-to-run provision to Board members seeking re-election would actually make the scenario the Legislature seeks to avoid — the Boards of Election not being able to function due to a lack of a quorum — more likely, since in some years as many as half the members would need to resign. Importantly, the process for filling vacancies on the Board pursuant to 18 V.I.C. § 41(f) may also prove inadequate, since individuals who previously unsuccessfully sought election to the Board may attempt to run again, and thus themselves be

---

[7] "The quorum of each Board shall be the majority of its members. No official action may be taken by a Board unless . . . a quorum is present by affirmative vote of a majority of its members present." 18 V.I.C. § 41(h).

[8] Section 41(f) provides, in its entirety, as follows:

Whenever a vacancy occurs, the Board of Elections shall certify within thirty (30) days thereafter, the candidate who received the next highest vote count in the immediately preceding election. The individual must be a member of the same political party in which the vacancy occurred. The person shall serve for the remainder of the term; provided, however, whenever a vacancy occurs and the candidate who received the next highest vote count either is not in the same political party as the person who vacated the position, or the person who vacated the position is not affiliated with any political party, then the Board shall certify the candidate who received the next highest vote count.

required to resign immediately upon taking office. Given these circumstances, the Legislature could rationally determine that the resign-to-run provision is necessary to provide for a functioning and conflict-free Board to administer gubernatorial and senatorial elections — the offices that exercise the executive and legislative powers of the Virgin Islands — but that extending it to Board members seeking re-election would do more harm than good. *See Armour v. City of Indianapolis*, 566 U.S. 673, 685, 132 S. Ct. 2073, 182 L. Ed. 2d 998 (2012) (to satisfy equal protection concerns under rational basis review, the Constitution does not require the government "to draw the perfect line nor even to draw a line superior to some other line it might have drawn," but "only that the line actually drawn be a rational line").

## 2. First Amendment

The members also maintain that the resign-to-run provision is invalid under the First Amendment because it simultaneously implicates their right to associate for the advancement of their political briefs, as well as the right of voters to cast their votes effectively for the candidates of their choice. The Superior Court summarily rejected these arguments in one paragraph, concluding that the resign-to-run provision only "has a negligible impact" on First Amendment rights "because a member sitting on a board of election may run for office" and "people may still support [the member] and vote for [the member]," but the member "must simply resign first." (J.A. 29.) Thus, the Superior Court determined that the burden on First Amendment interests is "insignificant" and that the resign-to-run provision only constitutes a "*de minim[i]s* interference" that is warranted by "[t]he Territory's interests in maintaining functioning boards of election." (*Id.*)

 The Supreme Court of the United States considered a virtually identical First Amendment claim in *Clements*. Unlike its Fourteenth Amendment analysis, which was only the opinion of a four-justice plurality, the portion of the *Clements* opinion addressing the First Amendment was joined by a majority of the court, and thus constitutes binding precedent. In its decision, the United States Supreme Court described the burden of the resign-to-run provisions on First Amendment rights as "insignificant," in that the resign-to-run provision "in no way restrict[s]" the "ability to participate in the political campaigns of third parties," "limit[s] neither political contributions nor expenditures," "do[es]

469

not preclude . . . holding office in a political party," and permits the officeholders to "distribute campaign literature and [to] make speeches on behalf of a candidate," while simply requiring the officeholder to choose between awaiting the conclusion of their term or resigning. *Clements*, 457 U.S. at 971-72. Because both this Court and the Superior Court are bound by the United States Supreme Court's interpretation of the United States Constitution, *see Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 756 n.9 (V.I. 2014), this Court is not free to simply disregard the clear holding of *Clements* that the First Amendment is not violated by a resign-to-run statute that does nothing more than to require a current officeholder to choose between running for a different office and serving out their current term.

## D. Representation by the Department of Justice

Finally, the members contend that the Virgin Islands Department of Justice is precluded from representing Fawkes in this matter, and therefore should have been disqualified as counsel. Because the Superior Court did not consider the matter — even though it had been raised — the issue would ordinarily not be considered by this Court in the first instance. *See Mahabir v. Heirs of George*, 63 V.I. 651, 667 (V.I. 2015); *Bryan v. Fawkes*, 61 V.I. 416, 476 (V.I. 2014), *Gardiner v. Diaz*, 58 V.I. 199, 205 n.5 (V.I. 2013). Nevertheless, in their reply brief, the members maintain that "[t]he issue of legal representation for the Supervisor of Elections is both recurring and important," and urge this Court to address the issue even though the Superior Court failed to do so. Because the issue represents a pure question of law, and was one that, due to the very nature of the claim, should have been considered by the Superior Court at the earliest opportunity, *see In re Drue*, 57 V.I. 517, 526-27 (V.I. 2012), we exercise our discretion to consider it on appeal.

██ ██ According to the members, the Department of Justice cannot represent Fawkes because title 18, section 51 of the Virgin Islands Code provides that "[t]he Joint Board of Elections shall have the discretion to retain the Attorney General of the Virgin Islands to serve as counsel for each board of elections, or to retain an independent Counsel." However, the fact that a statute authorizes the Board to retain the Attorney General does not necessarily mean that the Supervisor of Elections is not authorized to do so. Importantly, a different statute expressly provides that

470

The Attorney General shall have the following powers and duties . . . .

> (1) except in cases where the United States attorney is representing the Government of the United States Virgin Islands at the request of the Governor, to appear for and represent the executive branch of the Government of the Virgin Islands before the courts in all civil proceedings in which the said Government, *or any executive department, board, commission, agency, instrumentality or officer thereof is interested*;
>
> . . . .
>
> (6) to appear for and represent the executive branch of the Government of the United States Virgin Islands, and *all departments, boards, commissions, agencies, instrumentalities or officers thereof*, before all administrative tribunals or bodies of any nature, in all legal or quasi-legal matters, hearings or proceedings.

3 V.I.C. § 114(a) (emphases added). The Supervisor of Elections is an officer of the Government of the Virgin Islands. *See* 18 V.I.C. § 4(a) (establishing "the Office of Supervisor of Elections"). It is well-established that "when two statutes touch on the same subject, 'we give effect to both unless doing so would be impossible.' " *Haynes v. Ottley*, 61 V.I. 547, 561 (V.I. 2014) (quoting *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1225 (11th Cir. 2014)). In this case, the two statutes can be easily harmonized, in that 3 V.I.C. § 114(a)(1) and (6) establish a general duty for the Department of Justice to represent the Executive Branch as well as all boards, commissions, agencies, and officers of the Government, while 18 V.I.C. § 51 creates an exception to that duty with respect to the Board of Elections, which is permitted to forego representation by the Department of Justice and hire independent counsel instead. Therefore, the Department of Justice was permitted to represent Fawkes in this matter.

## III. CONCLUSION

Although it characterized its decision as denying the members' motion seeking a preliminary injunction, the Superior Court, by consolidating the hearing on the preliminary injunction with a trial on the merits and then determining that the members could not succeed on the merits of any of their claims, effectively issued a final decision rejecting their constitutional claims and denying their request for a permanent injunction. While the

Superior Court erred in its analysis of the members' Fourteenth Amendment claim, the error is ultimately harmless, in that the members are not similarly situated to ordinary government employees and a rational basis exists for treating members running for re-election to the Board differently from members seeking election to a different office. Moreover, the Superior Court committed no error when it rejected the members' First Amendment claim, given that binding precedent from the Supreme Court of the United States compelled such a result. Finally, the Department of Justice was authorized to represent Fawkes in this matter pursuant to section 114(a) of title 3 of the Virgin Islands Code. Accordingly, we affirm the Superior Court's June 24, 2016 judgment, and remand the matter for the limited purpose of entering its final order of dismissal.