

**FILED**
August 22, 2024 04:21 PM
SX-2024-CV-00237
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

EL P. GUTIERREZ, JR.,
INDIVIDUALLY AND AS CO-TRUSTEE OF
THE TRUST AGREMENT OF IGNACIA M.
GUTIERREZ, DATED OCTOBER 31, 2001, AS
AMENDED JULY 27, 2007, IGNACIA
GUTIERREZ, PATRICIA M. WOREDE AND
MANUEL P. GUTIERREZ, JR., CO-TRUSTEES
AND AS CO-TRUSTEE OF THE TRUST
AGREEMENT OF MANUEL P. GUTIERREZ,
DATED OCTOBER 31, 2001, AS AMENDED
JULY 27, 2007, MANUEL P. GUTIERREZ,
IGNACIA M. GUTIERREZ, PATRICIA M.
WOREDE, AND MANUEL P. GUTIERREZ, JR.,
CO-TRUSTEES,

                        Plaintiff,

v.

PATRICIA M. WOREDE, INDIVIDUALLY,
PATRICIA M. WOREDE IN HER CAPACITY AS
CO-TRUSTEE OF THE TRUST AGREEMENT
OF IGNACIA M. GUTIERREZ, DATED
OCTOBER 31, 2001, AS AMENDED JULY 27,
2007, IGNACIA M. GUTIERREZ, PATRICIA M.
WOREDE AND MANUEL P. GUTIERREZ, JR.,
CO-TRUSTEE, PATRICIA M. WOREDE IN HER
CAPACITY AS CO-TRUSTEE OF THE
AGREEMENT OF MANUEL P. GUTIERREZ,
DATED OCTOBER 31, 2001, AS AMENDED
JULY 27, 2007, MANUEL P. GUTTIERREZ.
IGANACIA M. GUTIERREZ, PATRICIA M.
WOREDE, AND MANUEL P. GUTIERREZ, JR.,
CO-TRUSTEES, ANA M. WITTMANN, AND
MARIA I. VALLS,

                        Defendants.

**SX-2024-CV-00237**

**2024 VI SUPER 31U**

---

## AMENDED MEMORANDUM OPINION

¶1 **THIS MATTER** is before the Court on a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") filed by Plaintiff Manuel P. Gutierrez Jr. ("Gutierrez" or "Plaintiff") pursuant to V.I. R. Civ. P. 65.

¶2 Accompanying the Motion are: (1) the Trust Agreement for Ignacia M. Gutierrez dated October 31, 2001 ("I.G. Trust"); (2) the Trust Agreement for Manuel P. Gutierrez dated October

2024 VI SUPER 31U

31, 2001 ("M.G. Trust"); (3) First Amendment to the July 27, 2007, Trust Agreement of Ignacia M. Gutierrez dated October 31, 2001 ("First Amendment"); (4) The Second Amendment to the Ignacia M. Gutierrez Living Trust ("Second Amendment"); (5) Banco Popular Checking Account statement for the period of May 10, 2023, to June 8, 2023, for the Ignacia M. Guttierez and Manual P. Gutierrez Trust; and (6) Merrill account statements. Plaintiff also filed a Verified Complaint in which he requested a temporary restraining order ("TRO"), preliminary and permanent injunctive relief, and declaratory relief. Plaintiff's Verified Complaint claims, breach of trust, intentional/ negligent infliction of emotional distress, civil conspiracy, requests to remove Worede as the trustee, punitive damages, and accounting. Additionally, a Certification of Carl A. Beckstedt III Re: Notice was filed with the Motion, certifying the efforts undertaken to serve the Defendants concurrent with the filing of the Verified Complaint and Plaintiffs' motion for Temporary Restraining Order and Preliminary Injunction.

¶3 The Court will issue a TRO on its finding that the motion, Verified Complaint and supporting documents establish that "immediate and irreparable injury, loss, or damage" will result should Defendant Worede be permitted to continue acting as a trustee of the I.G. Trust and the M.G. Trust, singly and in concert with the Defendants, between now and the date of the hearing for preliminary injunction.

## I.    FACTUAL BACKGROUND

¶4 The Verified Complaint, I.G. Trust, the M.G. Trust, the First Amendment to the Trust Agreement of Ignacia M. Gutierrez, and Second Amendment to the Ignacia M. Gutierrez Living Trust establish the following facts.

¶5 Manuel P. Gutierrez, Jr., Patraca M. Worede ("Worede"), Ana Wittmann ("Wittmann"), and Maria I. Valls ("Valls") are children of Ignacia M. Gutierrez ("I.G.") and Manuel P. Gutierrez ("M.G."). *Compl.* at ¶9. Gutierrez and Worede are the co-trustees of the I.G. Trust and the M.G. Trust. On July 27, 2007, the I.G. Trust and M.G. Trust were amended to name new co-trustees of the respective trusts. *M.G. Trust*, Art. I §1 .1; *I.G. Trust*, Art. I § 1.1; *see also Compl.* at ¶¶57-58. In the I.G. Trust, the named co-trustees by the July 27, 2007, amendment are Ignacia M. Gutierrez, Patricia M. Worede, and Manuel P. Gutierrez Jr. In the M.G. Trust, the named co-trustees are Manuel P. Gutierrez, Ignacia M. Gutierrez, Patricia M. Worede, and Manuel P. Gutierrez Jr. Ignacia M. Gutierrez and Manuel P. Gutierrez are both deceased, leaving Worede, Gutierrez, Wittmann, and Valls as the beneficiaries of the I.G. Trust and the M.G. Trust. Each is entitled to a twenty-five percent (25%) share of the remaining trust property in each trust. *Compl.* at ¶9.

¶6 I.G. and M.G. made their primary living through M.G.'s position as a manager for Avis Rent a Car. *Compl.* at ¶12. M.G. and I.G. also owned and operated a gas station at Parcel No. 3 Estate La Reine, St. Croix, along the Centerline Road. *Id.* M.G. and I.G. were constantly over-spending and without cash to pay their personal and business expenses. *Id.* at ¶13. M.G. was then involved in a debilitating accident that left them solely reliant on their gas station operations for their livelihood. *Id.* at ¶14. Gutierrez returned to the island to assist his parents with the operation of their business, which was bankrupt, the property and equipment in total disrepair, and had significant debt obligations. *Compl.* at ¶15, 17-21, 22.

¶7 The gas station property and the family residence located at Plots 114, 115 and 116 Mary's Fancy, St. Croix, USVI were all under owner-financed mortgages with balloon payments coming due imminently. *Id.* at ¶19. In addition, I.G.'s and M.G.'s credit cards were maxed out.

2024 VI SUPER 31U

Gutierrez helped to rebuild his parents' business, including injecting his own savings of approximately $14,000.00. *Id.* at ¶20. Guterriez also rebuilt the gas station property into a viable business and began his own business, Centerline Car Rental. *Compl.* ¶25-26.

¶8 Meanwhile, I.G. and M.G. continued to live beyond their means and the money generated by the gas sation business. *Id.* ¶13, 28, 37-38. They did not pay their personal expenses or file their tax returns, and their bank accounts were often overdrawn. *Id.* at 29. Eventually, Gutierrez took over managing his parents' personal finances, ensuring that their bills were paid, and taxes filed and paid. *Id.* at 31-37, 48, 49. Gutierrez sometimes floated funds from his own successful business.

¶9 Gutierrez and the Defendants agreed that as co-trustee, Worede would manage their parents' checkbooks, monitor the mail, and file taxes. *Compl.* at ¶40-42, 50-51. It was also agreed that as co-trustee, Gutierrez would continue to operate the gas station business and pay the routine expenses of his parents from the one paid on the commercial lease. *Id.* ¶40, 48. This arrangement continued for several years. *Id.* ¶65-67. On December 4, 2007, the 2001 deed conveying the La Reine Property to I.G. as the trustee of the I.G. and M.G. Trusts was recorded.

¶10 In 2010, Gutierrez realized that for four consecutive years income tax returns were not filed for his parents. Moreover, the bank accounts were frequently overdrawn for which he had to cover some large overdrafts. *Id.* at ¶65-67.

¶11 On November 12, 2012, M.G. died. Within seven years, Defendant Worede began selling I.G.'s real property in Florida and other investments over several years. *Compl.* at ¶76. Additionally, money was being transferred from the parents' accounts to benefit the Defendant sisters. *Id.* at ¶82.

¶12 Beginning in 2015, I.G.'s health declined. *Id.* at ¶75. Worede and her sisters began controlling their mother, who was unable to be involved in the management of her affairs. *Id.* at ¶81.

¶13 In February 2023, shortly before I.G.'s death on May 17, 2023, Gutierrez learned that there existed "The Second Amendment to the Ignacia M. Guitierrez Living Trust" ("Second Amendment") wherein Worede was named as the Trustee to the exclusion of Gutierrez. *Compl.* at ¶92 and 97-98. The Second Amendment had not been delivered to Gutierrez prior to that time and was not executed in the presence of two subscribing witnesses identifying their place of residence. *Id.* at ¶99. Within weeks of I.G.'s death, Defendants withdrew large sums of money from I.G. Trust account(s) and distributed the funds among themselves, to the exclusion of Gutierrez. *Id.* at ¶116-131.

¶14 On July 1, 2024, Plaintiff filed his Verified Complaint. A motion for Temporary Restraining Order and Preliminary Injunction was filed on July 10, 2024. In his motion, Plaintiff argues that irreparable injury will result if Defendant Patricia M. Worede is allowed to continue acting as co-trustee under the Trust Agreement for Manuel P. Gutierrez ("M.G. Trust") and the Trust Agreement for Ignacia M. Gutierrez ("I.G. Trust"), or as the sole trustee under the Second Amendment to the Ignacia M. Gutierrez Living Trust dated February 16, 2001. Plaintiff maintains that it is under his fiduciary authority that Worede, along with Ana M. Wittmann and Maria I. Valls (the three jointly referred to as "Defendants"), engaged in intentional improper gifting and distribution of trust assets of their parents' trusts in direct violation of Worede's fiduciary duties as co-trustee and the terms of the Trust Agreements, done with the intent to harm Plaintiff and prevent

him from exercising his fiduciary duties as the other co-trustee of their parents' trusts.  Plaintiff also claims that Worede failed to account for the property of the Trusts.

## II.     LEGAL STANDARD

### A.  Motion for Preliminary Injunction

¶15 In deciding whether to grant preliminary injunctive relief, the Court will consider four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Merchants Com. Bank v. Oceanside Vill., Inc.,* 2018 WL 6721771, at *1–2 (V.I. Super. Dec. 19, 2018) (*citing Yusuf v. Hamed*, 59 V.I. 841, 847 (2013)).  "Some showing" on all four factors must be evaluated "under a sliding-scale" standard. *Moses v. Fawkes*, 66 V.I. 454, 460 (2017).  If the moving party makes a clear showing that injunctive relief should be granted, it would be deemed to have met its burden. *Id.*

1.  <u>Reasonable Probability of Success on the Merits</u>

¶16 The meritoriousness of the movant claims is the most weighed factor under the sliding scale standard.  A strong showing of meritorious claim eliminates the need for a strong showing that the movant will suffer irreparable harm, which harm is greater than the harm to the nonmoving party. *See 3RC & Co. v. Boynes Trucking Sys.,* 63 V.I. 544, 556 (V.I. 2015).

¶17 For a moving party to show a reasonable probability of success on the merits, the party only needs to show "a reasonable chance, or probability, of winning." *See Yusuf v. Hamed,* 59 V.I. at  849 (citing *Singer Mgmt. Consultants, Inc. v. Milgram,* 650 F.3d 223, 229 (3d Cir. 2011)).

2. Irreparable injury to the Movant

¶18 Irreparable harm is the primary factor that a moving party must demonstrate to succeed on a motion for injunctive relief. *See 3RC & Co.*, 63 V.I. at 554. Under the sliding scale standard, the weight placed on a showing of irreparable harm "is less decisive where the likelihood of success on the merits is very strong. *Yusuf v. Hamed*, 59 V.I. at 847. "Where the moving party makes out a very strong showing on the merits… injunctive relief may still be appropriate even where the moving party's showing of 'certain and imminent harm for which a monetary award does not adequately compensate' is much weaker, so long as the non-moving party's likelihood of irreparable harm is similarly very low." *3 RC & Co.*, 63 V.I. at 557.

3. Harm to the nonmoving Party

¶19 Harm to the nonmoving party is another consideration for the Court. *See Yusuf*, 59 V.I. at 856. The Court's analysis must not only focus on the harm to the nonmoving party, but it "'must be balanced against any similar risk to the other party in the light of the chance of each party to succeed on the merits.'" *See 3RC & Co.*, 63 V.I. at 555 (quoting *Commonwealth v. County of Suffolk*, 418 N.E.2d 1234, 1235 (Mass. 1981)). If the moving party makes a strong showing on the merits and a weaker showing of irreparable harm, injunctive relief may still be appropriate if the nonmoving party's likelihood of suffering irreparable harm when the injunction is granted is similarly low. *See Id.* at 556 (citing *Yusuf v. Hamed*, 59, V.I. at 854). In balancing the likelihood of harm to each party, the Court should aim to maintain the status quo, which is defined as "'the last, peaceable, noncontested status of the parties.'" *See Yusuf*, 59 V.I. at 856-57 (finding that a preliminary injunction maintained the status quo by assuring that the parties retained equal control over their business pending trial). Defendants opposing a preliminary injunction will not suffer

irreparable harm if granting the injunction simply maintains the status quo. *See SBRMCOA, LLC,*

*v. Morehouse Real Estate Invs., LLC,* 62 V.I. 168, 202 (V.I. Super. Ct. 2015).

### 4. The Public Interest

¶20 In considering the public interest, courts "should seek to prevent the parties from

halting 'specific acts presumptively benefitting the public…until the merits [can] be reached, and

a determination made as to what justice requires[s].'" *Yusuf,* 59 V.I. at 858. Particular attention

should be paid to the effect of issuing injunctive relief. *Id.*

### III.   DISCUSSION

#### A. The Movant has shown reasonable probability of success on the merits.

¶21 Gutierrez makes several meritorious arguments. First, he argues that the proposed

Second Amendment to the I.G. Trust was not executed under the formalities required by law. 28

V.I.C. §42 requires an instrument transferring an interest in real property "to be executed in the

presence of two witnesses, who shall subscribe their names to the same as such." *28 V.I.C. §42.*

Additionally, each subscribing witness must state "his own place of residence and that he knows

the person described in and who executed the conveyance before an officer who is 'personally

acquainted with the subscribing witness or has satisfactory evidence that he is the same person

who was a subscribing witness to the instrument.'" *28 V.I.C. § 43.* The Second Amendment of

the I.G. Trust is signed by Ignacia M. Guiterriez as Grantor and notarized; however, there are no

subscribing witnesses.

¶22 Second, per the terms of the I.G. Trust, Article I, Section 1.1, before an amendment to

the trust may be deemed effective, it must be delivered to the trustee(s) during the grantor's

lifetime. Paragraph 98 of the Verified Complaint states that Gutierrez, as co-trustee was not served

a copy of the Second Amendment until after the grantor's death. This failure to effect service on Gutierrez may breach the I.G. Trust and invalidate the Second Amendment.

¶23 Third, Gutierrez argues that Worede is acting contrary to the terms of the I.G. and M.G. Trusts. He cites Article III, § 3.4 of the I.G. Trust which provides that the "trustee shall divide the remaining trust property, including any additions from any sources" equally among the four children. Paragraph 116-122 of the Verified Complaint states that this was not done, and, distribution was made to three of the four trust beneficiaries, and that Woerde refuses to make the distribution to Guiterrez, the fourth beneficiary, despite demands for distribution. Additionally, after I.G.'s death, Worede gave Defendant Wittmann a distribution described as a "Mom Gift" without distributing it to the other beneficiaries, in contravention of § 3.4. If proven, this may show that Worede is in breach of the terms of the I.G. Trust. Moreover, as Gutierrez argues, Article IV, § 4.8 of the I.G. Trust and M.G. Trust precludes a co-trustee from making discretionary distributions of income and principal from an account. This calls into question whether Worede had the authority to make the cash distributions.

¶24 Paragraph 123-131 of the Verified Complaint also alleges that certain valuable personal property and jewelry were distributed discretely among three of four of the beneficiaries, contrary to the terms of the Trust and the Parties' Memorandum of Understanding entered after the death of I.G. Gutierrez claims that this act violated Article III, §3.2 of the I.G. Trust. Section 3.2 states that the "Trustee shall deliver free from trust all remaining tangible personal property to beneficiaries who survive me, in proportional value, divided as they agree or if they do not agree within a reasonable time, as Trustee determines." *I.G. Trust, Art. III, § 3.2.*

¶25 Fourth, Gutierrez argues that Worede acted unilaterally, in disregard to their equal standing as Co-Trustees. Paragraphs 76 and 77 of the Verified Complaint allege that Defendants sold the real property of I.G. without involving Gutierrez in the sale or obtaining his consent as a co-trustee. Additionally, after the death of I.G., Worede, Gutierrez, and the other named Defendants mediated a memorandum of understanding to which all beneficiaries and co-trustees signed. *Compl.* at ¶135-145, 148. As alleged in the Verified Complaint, the Memorandum of Understanding ("MOU") provided for a due diligence period of four weeks within which the Defendants could determine if they wished to buy Plaintiff's interest in the La Reine Property. *Id.* at 165. The Parties also agreed to exchange information on the value and status of the assets that the liquidation or distribution of assets shall be mutually agreed to by all Parties. Before the expiration of the four weeks, Defendants notified that they did not intend to purchase Gutierrez's interest in the La Reine property, and Worede preceded to unilaterally sign a sale agreement for the sale of the Estate Mary's Fancy properties without Gutierrez's knowledge as co-trustee and beneficiary in violation of the agreement.

¶26 Worede also made several distributions from I.G.'s Merrill Lynch Account after the death of I.G. and after the parties entered the MOU. The shares transferred to each of the Defendants represent their one quarter interest in the Merrill Lynch asset. *Mot. for TRO and Prelim. Inj.* at 9; *Compl.* at ¶159-164. Despite demands by Gutierrez, Worede has refused to distribute his share to him. *Id.* at ¶164. There has been limited and delayed transparency for any of the distributions of funds and personal assets despite requests for accountings. *Id.* at ¶72, 94, 125, 131, 143, 153-154. If proven, each of these acts may establish a breach of the Parties' MOU agreement.

¶27 Finally, Gutierrez argues that the unilateral actions of Worede, as co-trustee, and the mismanagement and improper appropriation and distribution of assets of the I.G. Trust, deprived him of his "legal right to co-manage" the I.G. Trust. Gutierrez cites *Yusuf v. Hamed*, supra, for the position that he had a legal right as a co-trustee to manage the I.G. Trust, which was unlawfully interfered with by Worede. In *Yusuf v. Hamed*, the Supreme Court upheld the finding of the Superior Court that interference with one party's management rights by making decisions on business operations without consulting the other party supports a finding of irreparable harm in violation of the parties' contractual management rights. *Yusef*, 59 V.I. at 854. Gutierrez adds that the impact of the Defendants' conduct caused damage to his "reputation to perform his fiduciary duties." The Court finds that this argument has legal merit, not only based on the terms and enforceability of the Trusts, but also the terms of the MOU.

¶28 In total, Gutierrez has made a strong showing of meritorious claims.

**B.  The movant will be imminently and irreparably injured by denial of the relief.**

¶29 Here, the Court does not find a strong showing of imminent and irreparable injury. Gutierrez argues that he was denied the "legal right" to manage the I.G. Trust and the M.G. Trust by Worede's unilateral and exclusionary decision-making relative to the management and distribution of trust assets. He further claims that given the poor management decisions regarding the trust assets; the spillover effect would harm his public reputation. This argument is left to be proven and is not supported by the record before the court. Finally, Gutierrez's claim that he cannot be adequately compensated for the personal and unique items of personal property distributed among the Defendants to his exclusion is unconvincing as a valuation of those items could establish compensatory recourse. However, Worede's actions immediately following the death of

I.G. – to immediately withdraw from several accounts of the Trust and distribute among the Defendants – without Gutierrez's knowledge or benefit and Worede's other discreet actions as a Trustee in contravention of the terms of the Trusts and Agreement of the heirs reveal a pattern of wrongful conduct to the exclusion of one heir. This conduct is likely to persist if the Court does not enter an injunction barring any further acts by Worede as trustee until a hearing may be had.

### C. The granting of the preliminary injunction will not result in even greater harm to the nonmoving party.

¶30 Gutierrez maintains that the injury to himself outweighs the harm to the Defendants. Gutierrez requests that Woerde be prevented from making any further transfer of assets, except by specific order of the court. He requests an order directing that Worede transfer to him what he argues is his quarter share of the Merrill Lynch asset. Guterriez is also concerned that the assets of the I.G. Trust and the M. G. Trust will be depleted to the detriment of Plaintiff, as one of the Trust's beneficiaries. This argument has weight as the Verified Complaint states in paragraphs 157-164 that shortly after agreeing not to take certain actions, Worede and the other Defendants nonetheless went forward and transferred certain assets and entered into an agreement to sell trust property in contravention to the terms of the MOU. If true, this behavior supports that Worede may take adverse action prior to the Court being able to fully hear the arguments in this case. To ensure that the status quo is maintained without further harm, the restraining order is an appropriate short-term remedy.

### D. The Preliminary Injunction will meet the public interest.

¶31 The effect of issuing a temporary injunction would be to preclude any further transfer of Trust assets by Worede until the Court can determine the authority of Worede to act singly as a trustee and her responsibility to act jointly as a co-trustee is assessed by the Court. It would also

require complete accounting of all transactions, supported by vouchers, statements, or other evidence of transactions. There is a public interest in ensuring that administration of the Trusts is done in accordance with the law and the terms of the trust agreements. This is particularly important where the very nature of a trust agreement is intended to have no court supervision. Breaches of fiduciary duties can cause harm to beneficiaries.

## IV.    CONCLUSION

¶32 Each of the four factors, when considered under the sliding scale standard, weighs in favor of granting a temporary restraining order. The Court will schedule this matter for an expedited hearing on the merits in accordance with Virgin Islands Rules of Civil Procedure 65(a)(2). Notice shall be given to the adverse party per Rule 65(a)(1) of the Virgin Islands Rules of Civil Procedure. A separate Order shall be issued.

**DONE AND SO ORDERED** this ___22___ day of August 2024.

**HON. YVETTE ROSS-EDWARDS**
Judge of the Superior Court

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

By: _____
        Court Clerk
Dated: __08/22/2024_____

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
August 22, 2024 04:23 PM
SX-2024-CV-00237
**TAMARA CHARLES**
**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Croix

| | |
|---|---|
| Manuel P. Gutierrez, Jr., <br> **Plaintiff** <br> **v.** <br><br> Patricia M. Worede et al, <br> **Defendant.** | Case Number: **SX-2024-CV-00237** <br> Action: **Temporary Restraining Order** |

## NOTICE of ENTRY
## of
## ORDER

**To:** Carl A. Beckstedt, III, Esq.    Lee J. Rohn, Esq.

                 Nathan John Mirocha, Esq.

**Please take notice that on August 22, 2024 a(n) Amended Memorandum Opinion dated August 22, 2024 was/were entered by the Clerk in the above-titled matter.**

**Dated:** August 22, 2024

                **Tamara Charles**

                **Clerk of the Court**

By:

                **Tisha Laurencin**
                **Court Clerk II**